**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **MARLON BRANDO RIBEIRO**, <br><br> *Petitioner,* <br><br> v. <br><br> **J.L. JAMISON, et al.**, <br><br> *Respondents.* | **Case No. 2:26-cv-02326-JDW** |

## <u>MEMORANDUM</u>

When Congress adopted the Immigration and Nationality Act, it created a series of steps for immigration authorities to follow when they encounter noncitizens at or near the border. Those steps are like stops on a railroad, one after the other. However, Congress also created some diversions from the main track. When I interpret the statute, I can't just look at one route under the statute in isolation. Instead, I must view them as an interconnected network that makes sense as a whole, hopefully without any bridges to nowhere.

The interplay of two statutory sections is particularly at issue in this case. In 8 U.S.C. § 1225(b)(1), Congress tells immigration authorities to remove aliens who have no basis to be in the country on an expedited basis. If someone seeks asylum, Congress tells immigration authorities to detain that person pending resolution of the asylum proceedings. In a separate statutory section, Congress gives the Secretary of Homeland Security the discretion to parole aliens into the country during the pendency of their

detention. In effect, that's a side trip from the statutory path on which the person was proceeding. However, Congress also says that anyone on that side path has to return to the custody from which he was paroled. So, the side path brings the person back to where he started. In Marlon Brando Ribiero's case, when his parole ended, he had to return to the mandatory detention to which he was subject when DHS paroled him. I therefore hold, for the reasons below, that the INA authorizes his detention without a bond hearing and that his detention does not violate the Fifth Amendment.

## I.    BACKGROUND

### A.    Mr. Brando Ribeiro's Detention

On August 7, 2021, Mr. Brando Ribeiro, a citizen of Brazil, entered the United States without inspection. A border patrol officer arrested him approximately 200 yards north of the United States-Mexico border near Tecate, California. Border Patrol then transported him to San Ysidro, California to be screened and processed.

Three days later, a border patrol agent conducted a screening interview of Mr. Brando Ribeiro. During the interview, Mr. Brando Ribeiro admitted to entering the United States without inspection or valid documentation and stated that he feared returning to Brazil. The officer determined that Mr. Brando Ribeiro was inadmissible to the United States, partially completed a Notice and Order of Expedited Removal, memorialized the interview by creating a Record of Sworn Statement, and referred him to an asylum officer for a credible fear interview.

An asylum officer interviewed Mr. Brando Ribeiro on September 28, 2021. The officer found him to have a credible fear of persecution or torture in the event he returned to Brazil. He was then placed into removal proceedings under 8 U.S.C. § 1229a and detained for further consideration of his asylum application.

On November 3, 2021, U.S. Immigration and Customs Enforcement ("ICE") issued an "Interim Notice Authorizing Parole" to Mr. Brando Ribeiro. The notice indicated that he was being paroled under 8 U.S.C. § 1182(d)(5)(A) "for one year beginning from the date on th[e] notice and will automatically terminate upon [his] departure or removal from the United States or at the end of the one-year period." (ECF No. 6-3 at 2.) The Parole Notice was dated November 3, 2021.

One year later, when his parole expired, Mr. Brando Ribeiro did not return to ICE custody. Three months after that, he was arrested for various theft-related offenses. He then failed to appear for a hearing in immigration court and was ordered removed *in absentia*. He remained a fugitive for two years until the immigration court reopened his removal proceedings in March 2025. Immigration authorities arrested him on April 7, 2026. He is currently detained at the Federal Detention Center in Philadelphia.

**B.    Procedural History**

On April 9, 2026, Mr. Brando Ribeiro filed a Petition For Writ Of Habeas Corpus. He asserts that Respondents violated the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), and the Due Process Clause of the Fifth

Amendment by detaining him without a bond hearing. The following day, I ordered Respondents to advise me whether they would oppose Mr. Brando Ribeiro's Petition and, if so, whether they intended to make any arguments other than the ones they made in two recent cases before me: *Kashranov v. Jamison*, No. 2:25-cv-05555-JDW, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025) and *Olimov v. Jamison*, No. 2:26-cv-00532-JDW, 2026 WL 596155 (E.D. Pa. Mar. 3, 2026). Respondents submitted a letter indicating they would oppose the Petition on different grounds. They then filed an opposition on April 16, 2026, and Mr. Brando Ribeiro replied that same day. I held argument on April 29, 2026, and ordered supplemental briefing concerning whether Respondents complied with the INA's requirement to return Mr. Brando Ribeiro to custody "forthwith" and whether their failure to comply with that requirement impacts their authority to detain him under 8 U.S.C. § 1225(b)(1)(B)(ii). The Parties submitted supplemental briefs, and the Petition is now ripe for review.

## II.    LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States … in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). The burden is on the petitioner to show that he is in custody

in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    DISCUSSION

### A.    INA

The INA creates a framework for how immigration authorities may treat aliens entering the United States. "Inspection[s] by immigration officers, expedited removal of inadmissible arriving aliens, [and] referral for hearing[s]" occur pursuant to 8 U.S.C. § 1225. With respect to inspections, Section 1225(a) requires an alien who is arriving in the United States at a port of entry or who is caught entering at some other spot to apply for admission to the United States. *Id.* § 1225(a)(1); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). The statute deems each such alien to be "an applicant for admission." 8 U.S.C. § 1225(a)(1). It then requires an immigration officer to conduct an inspection.  See *id.* § 1225(a)(3). If the applicant for admission is an "alien[] arriving in the United States [or] certain other alien[] who ha[s] not been admitted or paroled," the immigration officer will conduct an inspection in accordance with Section 1225(b), which creates a series of steps for immigration authorities to follow.[1] That

---

[1] A "certain other alien[] who ha[s] not been admitted or paroled" is "[a]n alien ... who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii). There is one exception to this definition for "an alien who is a native or citizen of a country in the Western Hemisphere

application of these provisions to Mr. Brando Ribiero's case demonstrates that Respondents have not violated the statute in their detention of him.

### 1.    Initial admissibility determination

Mr. Brando Ribiero was an arriving alien who lacked proper documentation, so immigration authorities conducted the required inspection of him. [2] Section 1225(b)(1)(A) obligated the immigration officer conducting the screening interview to determine whether he inadmissible under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7). Section 1182(a)(7) in turn states that "any immigrant at the time of application for admission who is not in possession of a valid … entry document … is inadmissible." 8 U.S.C. § 1182(a)(7). In this case, the immigration officer conducting the screening interview determined that Mr. Brando Ribeiro was inadmissible after Mr. Brando Ribiero admitted that he didn't have a valid entry document. Therefore, Section 1225(b)(1)(A)(i) required the officer to order Mr. Brando Ribiero "removed from the United States without further hearing or review …." *Id.* § 1225(b)(1)(A)(i). This process is often known as "expedited removal."

---

with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry." 8 U.S.C. § 1225(b)(1)(F).

[2] The fact that border patrol intercepted Mr. Brando Ribeiro 200 yards inside the United States does not mean he wasn't at the border. The Supreme Court has made clear that an alien who is apprehended a short distance inside the United States after crossing the border is not considered to have entered the country for immigration purposes. *See Thuraissigiam*, 591 U.S. at 139.

6

At the hearing and in his supplemental brief,[3] Mr. Brando Ribiero argued that immigration authorities did not follow procedures to place Mr. Brando Ribiero in expedited removal proceedings. I disagree. Pursuant to 8 C.F.R. § 235.3(b)(2), immigration authorities invoking expedited removal authority must create a record of the procedures using a Form I-867AB and then serve the alien with Form I-860. Respondents have provided me with the record of proceedings on Form I-867AB. (ECF No. 6-6.) They have also provided me with a copy of a Form I-860, but it lacks Mr. Brando Ribiero's signature and a completed certificate of service under the section titled "Order of Removal." (ECF No. 6-1.)

Mr. Brando Ribiero asserts that the "[f]ailure to properly execute and serve the Form I-860 renders the expedited removal order void, and nullifies any supposed basis for removal." (ECF No. 14 at 2.) But he does not cite anything to support that sentence, and I don't agree. Section 1225(b)(1) mandates expedited removal proceedings for aliens like Mr. Brando Ribiero. At the same time, the statute forbids an alien's removal if he seeks asylum and demonstrates a credible fear of persecution. Given that statutory framework,

---

[3] When I ordered expedited briefing, I asked the Parties to address two specific questions, neither of which dealt with questions about whether Mr. Brando Ribiero was in expedited removal proceedings. Mr. Brando Ribiero's counsel went beyond what I requested in their response. That was improper. If they wanted to expand the scope of supplemental briefing, they should have asked for permission, not done so without it and begged for forgiveness. Their approach to supplemental briefing meant that they addressed an issue that Respondents' lawyers did not know would be the subject of that briefing. That's not fair. I expect more fairness from the lawyers before me.

it's irrelevant whether someone from DHS signed and served an Order Of Removal because DHS couldn't remove Mr. Brando Ribiero at that point anyway. In addition, because Section 1225(b)(1) makes the expedited removal process mandatory. Regulatory paperwork requirements cannot negate that statutory command. In any event, the complete evidentiary record, including both the Form I-867AB and the partial I-860, tell me that the authorities did place Mr. Brando Ribiero in expedited removal proceedings, as the INA required them to do. The fact that Respondents have not submitted a completed I-860 is not dispositive because Respondents do not bear the burden of proof and Mr. Brando Ribiero has not submitted any evidence suggesting that he didn't receive the required paperwork.

### 2.    Credible fear interview

Section 1225(b)(1)(A)(i) requires an immigration officer to order an "alien removed from the United States without further hearing or review" upon a finding of inadmissibility. But this statutory command has a crucial exception: the officer is not required to order the alien's removal if "the alien indicates either an intention to apply for asylum … or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). In the event that the alien makes such an indication, Section 1225(b)(1)(A)(ii) provides that "the officer shall refer the alien for an interview by an asylum officer." *Id.* § 1225(b)(1)(A)(ii). And if the asylum officer determines that the alien has a credible fear of persecution, Section 1225(b)(1)(B)(ii) requires that the

alien "be detained for further consideration of [his] application for asylum." *Id.* § 1225(b)(1)(B)(ii).

In this case, the Record of Sworn Statement, which Mr. Brando Ribeiro signed, shows that he told the immigration officer that he feared returning to Brazil. (*See* ECF No. 6-6 at 3, 4.) In response to Mr. Brando Ribeiro's indication that he feared persecution in Brazil, the officer acted in accordance with Section 1225(b)(1)(A)(ii)'s mandate and referred Mr. Brando Ribeiro to an asylum officer for an interview. The asylum officer found Mr. Brando Ribeiro to have a credible fear, so Respondents had a statutorily obligation to detain him for further consideration of his asylum application.

### 3.     Parole and re-detention

Although Section 1225 mandates detention for aliens awaiting asylum determinations, the INA offers an offramp from that mandatory detention. Section 1182 of the INA provides the Secretary of Homeland Security with discretion to "parole into the United States" an applicant "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Such parole must be temporary and "shall not be regarded as an admission of the alien." *Id.* The Secretary may revoke the alien's parole, at which point "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* If they asylum processes are a highway whose destination is a determination about an alien's ability to remain in the

country, then parole under Section 1182 is like a rest stop that allows aliens out of detention. But, like any rest stop, when the break is over, the alien has to get back on the highway at the same spot he got off.

On November 3, 2021, the Department of Homeland Security issued an Interim Notice Authorizing Parole to Mr. Brando Ribeiro. The Notice explained that Section 1182(d)(5)(A) governed his parole, which would end on November 3, 2022. (ECF No. 6-3 at 2.) Mr. Brando Ribeiro did not return to custody upon the termination of his parole. Indeed, three months after his parole ended, he was arrested for various theft-related offenses. Three months after that, he failed to appear at an immigration court hearing, and an immigration judge ordered him removed *in absentia*. He remained at large for the next two years until the immigration court reopened his removal proceedings in March 2025. Over three years after Mr. Brando Ribeiro's parole expired, immigration authorities arrested and re-detained him. Because Mr. Brando Ribeiro was being detained for further consideration of his asylum application under 8 U.S.C. § 1225(b)(1)(B)(ii) at the time he was paroled, Respondents re-detained him under this same statutory provision. Nothing about this was unlawful.

Mr. Brando Ribeiro makes multiple statutory arguments for why the INA does not allow him to be re-detained under 8 U.S.C. § 1225(b)(1)(B)(ii). But none is persuasive. *First*, he argues that Respondents cannot re-detain him upon the expiration of parole because the word "custody" in Section 1182(d)(5)(A) is not synonymous with "detention." I held in

a prior case that the term "custody" refers to Respondents' "control over the alien, as opposed to physical detention," so the terms "custody" and "physical detention" are not synonymous. *Olimov v. Jamison*, No. 26-cv-00532, 2026 WL 596155, at *6 (E.D. Pa. Mar. 3, 2026). However, in Mr. Brando Ribeiro's case, when DHS paroled him, the control that it asserted over him was mandatory physical detention "for further consideration of [his] application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Thus, Section 1182(d)(5)(A)'s mandate that he return to the custody from which he was released required him to return to the place in the statute from which he started: mandatory detention.[4]

*Second*, Mr. Brando Ribeiro contends that immigration authorities can no longer detain him under Section 1225(b)(1)(B)(ii) because they did not return him to custody "forthwith."[5] (*See* ECF No. 14 at 5–6 (quoting 8 U.S.C. § 1182(d)(5)(A)).) Instead, they waited more than three years after his parole ended. But that doesn't matter. Under the better-late-than-never principle, a statutory "provision that the Government 'shall' act within a specified time, without more, [is not] a jurisdictional limit precluding action later." *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158–59 (2003); *United States v. Nashville, C & St. L. Ry.*, 118 U.S. 120, 125 (1886). In other words, "a statute directing official action needs

---

[4] Because Mr. Brando Ribiero is physically present in the country only pursuant to a parole decision that created an exception to his detention under Section 1225(b)(1)(B)(ii), his case is different than other cases in which immigration authorities asserted detention authority under Section 1225(b)(2), which requires an alien to be "seeking admission." *See, e.g.*, *Kashranov*, 2025 WL 3188399, at *5; *Olimov*, 2026 WL 596155, at * 4.

[5] I raised this issue *sua sponte* during the hearing and directed briefing on it.

more than a mandatory 'shall' before the grant of power can sensibly be read to expire when the job is supposed to be done." *Barnhart*, 587 U.S. at 161.

The Third Circuit has applied this better-late-than-never principle when interpreting at least one provision of the INA. Section 1226(c)(1) provides that "[t]he Attorney General shall take into custody any alien who [has committed various crimes] when the alien is released." 8 U.S.C. § 1226(c)(1). In *Sylvain v. Att'y Gen. of United States*, 714 F.3d 150, 155–57 (3d Cir. 2013), the Circuit rejected the argument that this language imposes a duty on the Government to act immediately or lose the ability to detain an alien under this statutory provision. The Court explained that, under "the better-late-than never principle," it could not interpret the deadline of this provision to impose "a bar on [Government] authority after the [deadline] has passed – even when the word 'shall' appears in the text." *Id.* at 157–58.

Considering this precedent, Section 1182(d)(5)(A) does not impose a bar on immigration authorities' ability to return Mr. Brando Ribeiro to custody. While "immigration officials should act without delay" when a statute includes a deadline, their failure to act promptly does not divest them of their statutory power to act. *Id.* at 159. "Bureaucratic inaction – whether the result of inertia, oversight, or design – should not rob the public of statutory benefits." *Id.* at 158.

*Third*, Mr. Brando Ribeiro argues his detention is improper under Section 1225(b)(1)(B)(ii) because that provision does not apply to aliens who authorities have

paroled. He contends that detention under this provision only applies to an alien who (a) is "arriving in the United States" or (b) "has not been admitted *or paroled* into the United States." 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii) (emphasis added). But Mr. Brando Ribeiro takes that statutory provision out of context; it is only relevant to the screening process that immigration authorities conducted at the initiation of his immigration proceedings.

Section 1225(b)(1) creates a temporal framework made up of two stages. At the first stage, which is governed by Section 1225(b)(1)(A), an immigration officer conducts initial "screening" interviews of arriving aliens or certain other aliens, which as explained above are aliens who have not been admitted or paroled. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii). If the screening officer determines that an alien is inadmissible but has indicated an intention to apply for asylum or a fear of persecution, the officer refers the alien to an asylum officer and the alien moves on to the second stage of the statutory framework. *See id.* §§ 1225(b)(1)(A)(i), (ii). All other aliens never go on to the second stage; they are either admitted or ordered removed. Once an applicant passes through the first stage of this temporal framework, his parole history is no longer relevant because the screening process is over. The second stage of this framework concerns the alien's asylum application and is governed by Section 1225(b)(1)(B). At this stage, the asylum officer conducts a credible fear interview, and the alien is detained pending the outcome of his asylum application. *See id.* § 1225(b)(1)(B).

In this case, Mr. Brando Ribeiro had not been paroled at the time he was screened. In fact, he was screened, referred to an asylum officer for a credible fear interview, underwent the credible fear interview, and then was detained for over a month before DHS temporarily paroled him. He thus had moved out of the initial screening stage and was in the second stage at the time he was paroled. Since he moved out of the first stage, his parole history is no longer relevant. The fact that DHS paroled him does not somehow put him back into the screening stage. Indeed, Mr. Brando Ribeiro points to no statutory provision or precedential decision that would make him paroled *nunc pro tunc* to the time he was screened or require him to be screened again upon his return to custody. On the contrary, Section 1182(d)(5)(A) makes clear that he is to be returned to the custody from which he was paroled, *i.e.*, detention under the second stage pending his asylum application.

*Fourth*, Mr. Brando Ribeiro contends that his situation is essentially the same as the petitioner in *Villarreal Torres v. Jamison*, No. 2:26-cv-02000, 2026 WL 937929 (E.D. Pa. Apr. 7, 2026). But Mr. Villarreal Torres, unlike Mr. Brando Ribeiro, was never paroled under 8 U.S.C. § 1182(d)(5)(A). Rather, Mr. Villarreal Torres was released on his own recognizance. And – as I said in *Villarreal Torres* – that distinction matters. When a person is released on his own recognizance, he is not subject to the return-to-custody provision of Section 1182(d)(5)(A). That means immigration authorities can only detain a person who was released on his own recognizance by following the process set forth in Section 1226(a),

which as I explained in *Kashranov* requires a warrant and a bond hearing. Mr. Brando Ribeiro – unlike Mr. Villarreal Torres – was never released on his own recognizance; he was temporarily paroled and, therefore, subject to the return-to-custody provision in Section 1182(d)(5)(A).[6]

**B.      APA**

Federal courts have the power to review certain agency actions. The APA defines the scope of the courts' ability to review such actions. In particular, the APA authorizes a court to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Mr. Brando Ribeiro's sole APA argument is that Respondents' "application of [Section] 1225(b)(2) to [him] is arbitrary, capricious, and not in accordance with law." (ECF No. 1 at 21.) But immigration authorities didn't detain Mr. Brando Ribeiro under Section 1225(b)(2); it detained him pursuant to 1225(b)(1). And since I have held that Respondents' actions are in line with what Section 1225(b)(1) requires, I am not persuaded by Mr. Brando Ribeiro's arguments that Respondents' actions were arbitrary, capricious, and not in accordance with law.

---

[6] I included in a footnote in *Villareal Torres* saying that it would not matter if Mr. Villarreal Torres were paroled pursuant to Section 1182(d)(5)(A). But considering the arguments in this case, which were not before me in *Villareal Torres*, I now hold that it does.

### C. Due Process

In addition to the protections provided in the INA, the Due Process Clause of the Fifth Amendment forbids the Government from depriving "any person" of "liberty … without due process of law." "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty th[is] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But while the Constitution uses the term "any person," the Supreme Court has made clear that this term does not encompass aliens at the border. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (abrogated on other grounds).

Respondents' detention of Mr. Brando Ribeiro does not violate the Due Process Clause of the Fifth Amendment because Mr. Brando Ribeiro is subject to a legal fiction that treats him as an alien at the threshold of initial entry and thus not entitled to due process rights for immigration purposes. The Supreme Court has explained that aliens at the threshold of admission only have the due process rights that a statute provides to them. *Thuraissigiam*, 591 U.S. at 107. And "aliens who [are] detained shortly after unlawful entry" "are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at 139–40. This treatment remains the case even if immigration authorities parole an alien into the United States for years. *See Mezei*, 345 U.S. at 215; *see also Leng May Ma v. Barber*, 357 U.S. 185, 188–90 (1958).

16

Given the legal fiction for parolees, Mr. Brando Ribeiro is not entitled to any due process rights aside from what the INA provides. *See Thuraissigiam*, 591 U.S. at 140. He was caught shortly after unlawfully entering the country and is thus "'treated' for due process purposes 'as if stopped at the border.'" *Id.* The fact that he was paroled into and physically entered the country does not change that he is still, for legal purposes, at the border. *See Mezei*, 345 U.S. at 215; *see also Leng May Ma*, 357 U.S. at 188-90. So, as an alien still on the threshold of initial entry, he is only entitled to the rights provided to him by statute. *See Thuraissigiam*, 591 U.S. at 107, 140. Section 1225(b)(1) provides Mr. Brando Ribeiro with the ability to apply for admission into the United States and, in the event he is denied admission, to apply for asylum. *See* 8 U.S.C. §§ 1225(b)(1). "[T]he Due Process Clause provides nothing more." *See Thuraissigiam*, 591 U.S. at 140.[7]

## IV.    CONCLUSION

Immigration authorities placed Mr. Brando Ribiero in expedited removal proceedings, and the INA requires them to detain him. His parole was a temporary reprieve from that detention, but when his parole ended, the statute required that he go

---

[7] I recognize that this holding conflicts with what I said in *Olimov* – specifically, that subjecting "aliens who physically entered the United States on parole" to "mandatory detention without the opportunity for a bond hearing once their parole ended" would violate the Due Process Clause. 2026 WL 596155, at *6. But, in that case, the Government did not argue that Mr. Olimov was subject to an entry fiction. Now, having had the benefit of briefing on that doctrine, I am convinced that inadmissible aliens who were paroled into and then physically entered the United States are treated for constitutional purposes as if they never entered. *See Mezei*, 345 U.S. at 215; *see also Leng May Ma*, 357 U.S. at 188–90; *see also Kaplan v. Tod*, 267 U.S. 228, 230 (1925).

back to the custody from which he was released, meaning back to detention. His detention is therefore proper, and his habeas petition fails as a result. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

May 20, 2026